# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 4:17-CR-00025 |
| v. | (Judge Brann) |
| DAVID DEWALD, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 21, 2019

Currently pending before the Court is David DeWald's motion *in limine* in which he seeks to exclude (1) certain electronic communications between himself and an alleged victim, (2) evidence of conduct underlying a 2012 charge in federal court for traveling in interstate commerce for the purpose of engaging in explicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b) ("2012 Charge"), and (3) evidence of conduct underlying state court charges related to his May 11, 2016 arrest ("State Charges").[1] For the following reasons, the motion will be granted in part and denied in part.

### I. BACKGROUND

In 2016, David DeWald was arrested in Delaware County, Pennsylvania, and charged with ten separate offenses, including rape, involuntary deviate sexual

---

[1] Doc. 103.

1

intercourse, statutory sexual assault, unlawful contact with a minor, and kidnapping of a minor.[2] DeWald's alleged victim, a 14-year-old girl named here as B.P., informed police that DeWald contacted her using an internet messaging application called "KIK."[3] DeWald sent her sexually aggressive messages and eventually persuaded her to meet. DeWald transported B.P. from her home in Eddystone, Pennsylvania, to DeWald's home in Bloomsburg, Pennsylvania. While en route, DeWald forced B.P. to perform oral sex and, after they arrived at DeWald's apartment, DeWald raped B.P. He then drove B.P. back to Eddystone and threatened her not to tell anyone.

After this encounter, DeWald continued to communicate with B.P using an unspecified application that allowed free text messages and phone calls, and DeWald asked B.P. to meet him a second time. Police reviewed text messages between DeWald and B.P. and confirmed the time and location of the meeting. With B.P.'s father's consent, police recorded a conversation between B.P. and DeWald as he drove toward the meeting place. In this conversation, DeWald acknowledged the age difference between himself (a 40-year-old) and B.P., and told B.P. that he expected her to perform oral sex on him. Police arrested DeWald and eventually

---

[2] Doc. 19-1.
[3] The facts detailing the events underlying DeWald's arrest are taken from the affidavit submitted in support of the state court application for a search warrant. (*See* Doc 19-2). As such, these facts are presented for background purposes only and are not intended as an endorsement of their veracity.

obtained a warrant to search DeWald's phone and laptop computer. In those searches, police discovered sexually explicit communications between DeWald and B.P., as well as communications between DeWald and four other victims in which DeWald had solicited both sex and sexual pictures from the alleged victims.[4]

Based in part on this evidence, DeWald was federally indicted on two counts of attempted production of materials depicting the sexual exploitation of minors (Counts 1, 3), in violation of 18 U.S.C. § 2251(a) and (e), and three counts of using a facility or means of interstate commerce to entice a minor to engage in sexual activity (Counts 2, 4, 5), in violation of 18 U.S.C. § 2422(b).[5] DeWald pled not guilty,[6] and later filed a motion to suppress evidence obtained from his phone and laptop, which this Court denied.[7]

DeWald has now filed a motion *in limine* seeking to exclude: (1) electronic communication between DeWald and the alleged victims "that does not directly pertain to the elements of the alleged crimes charged"; (2) evidence related to the 2012 Charge; and (3) evidence related to the State Charges.[8] DeWald contends that the electronic communications should be excluded because they are not relevant and—due to the large volume of communications—pose a significant risk of

---

[4] Doc. 19-3.
[5] Doc. 1.
[6] Doc. 12.
[7] Docs. 19, 88, 89.
[8] Doc. 103.

confusing or misleading the jury, and would needlessly waste time and present cumulative evidence.⁹ DeWald further asserts that evidence of the 2012 Charge or State Charges constitute inadmissible character evidence, and any probative value is substantially outweighed by the danger of unfair prejudice.¹⁰ The Government opposes the motion in its entirety.¹¹

## II. DISCUSSION

Motions *in limine* are threshold motions that courts will typically deny or defer ruling upon until the time of trial (outside of the presence of the jury), unless the evidence is clearly inadmissible. Such determinations are preliminary rulings that are "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer."¹² Although the Federal Rules of Evidence do not expressly acknowledge motions *in limine* or provide for their use, "the practice has developed pursuant to the district court's inherent authority to manage the course of trials."¹³

---

⁹ Doc. 103-1 at 3-4.
¹⁰ *Id.* at 4-5.
¹¹ *See* Doc. 104. During the pretrial conference, the Government clarified that it will not seek to introduce evidence of the State Charges or 2012 federal charge, but will instead seek to introduce evidence of the conduct underlying those charges. The Court will restrict its analysis accordingly.
¹² *Luce v. United States*, 469 U.S. 38, 41 (1984). The Court notes that it is somewhat handicapped in its analysis by the lack of any specifics related to the evidence that DeWald seeks to exclude. (*See* Doc. 103). Any discussion below is therefore, by necessity, conditional in nature.
¹³ *Luce*, 469 U.S. at 41 n.4.

4

To obtain a conviction under 18 U.S.C. § 2422(b), the Government must prove that: (1) DeWald used a facility or means of interstate commerce in an attempt to knowingly persuade, induce, entice, or coerce a minor to engage in sexual activity; (2) DeWald believed the person was under the age of 18; and (3) that if sexual activity had occurred, DeWald could have been charged with a criminal offense under state law.[14] Similarly,

> To obtain a conviction for sexual exploitation of a minor (enticement) under [18 U.S.C.] § 2251(a), the government must prove that: (1) the defendant knowingly enticed a person under the age of 18; (2) to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) that either the defendant knew or had reason to know that the visual depiction will be transported in interstate commerce, or that the visual depiction has actually been transported in interstate commerce.[15]

### A. Electronic Communications

DeWald argues that evidence of any electronic communications that do not "directly pertain to the elements of the alleged crimes charged" should be excluded for two reasons.[16] First, DeWald contends that such evidence is not relevant to the underlying charges and should thus be excluded pursuant to Rules 401 and 402 of the Federal Rules of Evidence.[17] Second, DeWald asserts that the total electronic

---

[14] *See* 18 U.S.C. § 2422(b); *United States v. Roman*, 795 F.3d 511, 515 (6th Cir. 2015). Here, the underlying criminal acts alleged are involuntary deviate sexual intercourse with a person under the age of 16 and production and receipt of child pornography. (Doc. 1 at 2, 4-5).
[15] *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012).
[16] Doc. 103-1 at 3.
[17] *Id.*

communications include approximately 19,000 messages, the majority of which should be excluded pursuant to Federal Rule of Evidence 403 to prevent confusing the issues, misleading the jury, causing undue delay, or needlessly presenting cumulative evidence.[18]

As to DeWald's first contention, although irrelevant evidence is inadmissible at trial, "the bar for what constitutes relevant evidence is low."[19] "The test is whether the evidence has '*any tendency* to make a fact more or less probable than it would be without the evidence,' where 'the fact is of consequence in determining the action.'"[20]

As the Government correctly notes, to the extent that DeWald's messages are sexually explicit, they are relevant to establish that DeWald intended to induce, persuade, entice, or coerce his alleged victims to engage in sexual activity.[21] Even messages that are not sexually explicit may still be relevant as to whether DeWald attempted to persuade or entice a minor to engage in sexual activity. As several circuit courts have noted "[s]exual abuse of minors can be accomplished by several means and is often carried out through a period of grooming."[22] "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the

---

[18] *Id.* at 3-4.
[19] *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019).
[20] *Id.* (quoting FED. R. EVID. 401).
[21] *See United States v. Chip*, 762 F. App'x 86, 89 (3d Cir. 2019) (collecting cases).
[22] *United States v. Isabella*, 918 F.3d 816, 833 (10th Cir. 2019) (internal quotation marks omitted) (collecting cases).

6

ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity."[23] Thus, communications that may at first glance appear tangential to the underlying charges may be relevant to demonstrate that DeWald was grooming his alleged victims in an attempt to entice them to engage in sexual activity or send him sexually explicit materials. These may include messages that discuss either DeWald's or the victims' sexual experiences, preferences, or fantasies, plans to meet, or the sharing of explicit or pornographic materials that do not involve DeWald or the victims.

Consequently, many of the electronic communications seized by the Government would be relevant to establish context and to demonstrate that DeWald intended to coerce or entice the alleged victims, as required by the relevant statutes. Although it is certainly conceivable that some of the messages are not relevant for such purpose, DeWald has not pointed to any specific communications that he believes are irrelevant. Thus, the Court will conditionally deny DeWald's motion *in limine*, subject to any specific objections from DeWald at trial.[24]

As to DeWald's contention that presenting the electronic communications would violate Rule 403 by creating undue delay or wasting time, at the pretrial

---

[23] *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011).
[24] Although some of the communications apparently involve uncharged crimes, that does not change the Court's analysis.

7

conference the Government represented to the Court that it would not seek the admission of many of the electronic communications. Rather, the Government will attempt to introduce approximately 150 to 200 pages of electronic communications. The Court takes the Government at its word and, although voluminous, such a number is not likely to create undue delay or waste time. Finally, as to the contention that the messages would be cumulative or have the potential to mislead or confuse the jury, at this stage it is impossible for the Court to determine which messages would be cumulative or have the potential to mislead or confuse the jury. However, given the limited nature of the communications that the Government seeks to enter, such communications likely will present no such risk.

### B. Evidence Related to State Charges

Next, DeWald argues that evidence of any conduct underlying the State Charges should be excluded because it constitutes improper character evidence in violation of Federal Rule of Evidence 404(b) or, alternatively, because the danger of unfair prejudice substantially outweighs any probative value.[25] The Government in turn asserts that such evidence is admissible under Rule 404(b)(2) as it tends to demonstrate DeWald's intent and motive to sexually exploit a minor, as charged in Count 5.[26] The Court agrees with the Government.

---

[25] Doc. 103-1 at 5.
[26] Doc. 104 at 9-12.

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, evidence of prior acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[27] Thus, "[p]rior-acts evidence is admissible only if it is (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if requested."[28] "All this really means is that such evidence must have a nonpropensity purpose and satisfy the same relevancy requirements as any other evidence."[29]

Count 5 of the indictment charges DeWald with enticing a minor to engage in sexual activity with respect to the communications involving B.P. that were described in the background section of this memorandum.[30] The State Charges likewise originate from those events.[31] The connection between the federal and state charges is therefore obvious: in the federal indictment, DeWald is charged with attempting to entice B.P. to engage in involuntary deviate sexual intercourse, and in

---

[27] FED. R. EVID. 404(b)(2).
[28] *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013).
[29] *Id.*
[30] Doc. 1 at 5.
[31] *See* Doc. 19-1.

the state indictment DeWald is charged with having completed that act and committed involuntary deviate sexual intercourse with B.P.

As the United States Court of Appeals for the Ninth Circuit has emphasized, "[t]estimony regarding sexual contact with a minor is particularly relevant in the context of a prosecution under § 2422(b) because intent is a key element of the crime . . . [and w]hat could be more probative of illicit purpose than carrying through with the sex act itself?"[32] Similarly, the United States Court of Appeals for the Seventh Circuit has noted that "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children."[33] Because evidence of conduct underlying the State Charges establishes that DeWald completed sexual acts with the minor at issue in Count 5, such evidence is highly probative of DeWald's intent.

Despite the relevance of that evidence, it may nevertheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[34] "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its

---

[32] *United States v. Dhingra*, 371 F.3d 557, 565 (9th Cir. 2004).
[33] *Chambers*, 642 F.3d at 595 (internal quotation marks omitted).
[34] FED. R. EVID. 403.

10

admissibility."[35] "However, . . . there is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it."[36] "This presumption in favor of admission requires weighing the maximum reasonable probative force for the offered evidence against the *likely* prejudicial impact of the evidence."[37] "In sum, highly probative evidence is exceptionally difficult to exclude."[38]

As an initial matter, the Court recognizes that the conduct underlying the State Charges—most notably allegations of rape and sexual assault—"are by their nature highly inflammatory and prejudicial."[39] Nevertheless, the prejudicial nature of that conduct is limited by three facts. First, the United States Court of Appeals for the Third Circuit has stated that "descriptions are less vivid than videos"[40] and are thus less likely to inflame a jury. Any evidence related to the State Charges will be presented in testimonial form, mitigating the impact that such evidence will have on the jury.

---

[35] *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019) (internal quotation marks omitted).
[36] *Id.* (citations and internal quotation marks omitted).
[37] *Id.* (internal quotation marks omitted).
[38] *Id.* (internal quotation marks omitted).
[39] *Mitchell v. Gibson*, 262 F.3d 1036, 1065 (10th Cir. 2001).
[40] *United States v. Welshans*, 892 F.3d 566, 575 (3d Cir. 2018).

Second, although "all depictions of an adult engaging in sexual acts with a young child are bound to be repulsive, the impact on the jury will depend upon the nature and severity of the acts depicted."[41] Not only will there be no visual depiction, but the acts described—although repugnant—are less inflammatory in degree than the acts that the Third Circuit has previously held would "elicit[] little more than a visceral response of disgust and anger."[42] For example, in *United States v. Welshans*, the Third Circuit held that the district court erred in allowing "highly inflammatory descriptions of child pornography depicting abhorrent acts of bestiality, bondage, and violence perpetrated on very young children, including babies."[43] In *United States v. Cunningham*, the Third Circuit determined that "videos of pre-pubescent children being bound, raped, and violently assaulted" should have been excluded from trial.[44] In contrast, here the descriptions—while involving the possible rape of a minor—do not relate to a prepubescent child. Similarly, the Government has made representations that B.P.'s descriptions of sexual violence are not overly graphic, and, in many ways, are far less graphic than the messages that DeWald himself sent to B.P. Third, if requested, the Court will issue a limiting instruction directing the jury that any evidence related to the State Charges may be considered only for the

---

[41] *United States v. Cunningham*, 694 F.3d 372, 390 (3d Cir. 2012).
[42] *Welshans*, 892 F.3d at 576.
[43] *Id.* at 575-76. Notably, the Third Circuit also relied on the availability of other evidence that "greatly diminished" the probative value of the evidence.
[44] *Cunningham*, 694 F.3d at 390-91. Again, the Third Circuit concluded that other available evidence of child pornography mitigated the probative value of the inflammatory videos.

12

purpose of determining DeWald's intent in sending electronic communications to B.P.

Balanced against any prejudice is the highly probative nature of the evidence. As discussed previously, there is little that could be more probative of DeWald's intent to engage in illegal sexual acts with B.P. than the fact that DeWald engaged in such acts with B.P. The Court is mindful of the fact "[t]hat evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial."[45] Given the high bar to excluding such "highly probative" evidence,[46] the Court simply cannot conclude that evidence underlying the State Charges must be excluded from trial, and DeWald's motion *in limine* will therefore be conditionally denied.

### C. Evidence Related to 2012 Charge

Finally, DeWald contends that evidence underlying the 2012 Charge[47] should be excluded because it is inadmissible character evidence, and any probative value is substantially outweighed by the danger of unfair prejudice.[48] The Government contends that such evidence is admissible because it demonstrates DeWald's "sexual

---

[45] *Chambers*, 642 F.3d at 595.
[46] *GN Netcom, Inc.*, 930 F.3d at 85 (internal quotation marks omitted).
[47] *United States v. DeWald*, 1:14-cr-00090-TWP-DML (S.D. Ind., Doc. 1).
[48] Doc. 103-1 at 4.

interest in minors" which in turn is probative of his "intent and motive to sexually exploit a child."[49]

As an initial matter, the Court finds that evidence underlying the 2012 Charge is relevant under Rule 404(b)(2), as "it is generally accepted . . . that evidence of a defendant's sexual attraction to children (or teenagers) is probative of the specific intent element of criminal statutes involving sexual activity with minors."[50] The 2012 Charge involved travel to have illicit sexual conduct with a 15-year-old girl.[51] Such activity is probative of DeWald's general interest in sexual activities with minors, which in turn is probative of his intent to sexually exploit the alleged victims here.

Nevertheless, the Court will exclude such evidence under Rule 403. First, conduct underlying the 2012 Charge, while probative, is only minimally so. That conduct occurred approximately seven years ago and did not result in a conviction, which lessens its probative value.[52] Additionally, other highly probative evidence that may be admitted in this case—including numerous messages exchanged with the alleged victims and evidence that DeWald completed a criminal sexual act with

---

[49] Doc. 104 at 9.
[50] *United States v. Lieu*, 298 F. Supp. 3d 32, 52 (D.D.C. 2018) (collecting cases).
[51] *DeWald*, 1:14-cr-00090-TWP-DML (Doc. 1).
[52] *See Watcher v. Pottsville Area Emergency Med. Servs., Inc.*, 248 F. App'x 272, 278 (3d Cir. 2007) (noting conduct from "some years" earlier that did not result in criminal conviction was properly excluded); *but see United States v. Thornton*, 515 F. App'x 101, 103 (3d Cir. 2013) (conviction from eight years prior not "too distant to be sufficiently probative").

one of the alleged victims—reduces the probative value of the 2012 Charge; that there are other, more directly relevant methods of demonstrating DeWald's intent lessens the need to introduce evidence of conduct underlying the 2012 Charge.

Further mitigating any probative value is the fact that the 2012 Charge was dismissed by the Government "in the interests of justice."[53] Although the Government did not explicitly state so in its motion to dismiss, it was strongly implied that the victim was unwilling to cooperate, casting doubt on whether the Government could proffer sufficient evidence to garner a conviction.[54] Thus, there is little indication that the Government here could demonstrate that DeWald committed the conduct underlying the 2012 Charge or sufficiently authenticate the content or context of any messages between DeWald and the alleged victim.

In similar circumstances, the United States Court of Appeals for the Second Circuit noted that the dismissal of past charges "will normally alter the balance between probative force and prejudice, which is already a close matter in many cases where prior misconduct of a defendant is offered," thus often resulting in the exclusion of such evidence.[55] The potential prejudice to DeWald is amplified by some of the allegations made in the 2012 Charge. Although the federal charge

---

[53] *DeWald*, 1:14-cr-00090-TWP-DML (Docs. 68, 69).
[54] *Id.* at Doc. 68.
[55] *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989). *Schwab* involved several prior charges, three of which were dismissed by the prosecution and one of which proceeded to trial and resulted in an acquittal. *Id.* at 511 & 511 n.1. The Second Circuit did not differentiate between dismissals and acquittals in its opinion.

related to an attempt to have sexual relations with a minor, the criminal complaint made reference to other statements and actions that could easily inflame the jury—most notably DeWald's alleged threats to kill the minor's mother and aunt if they attempted to interfere in his relationship with the minor.[56]

> The Second Circuit in *United States v. Schwab* further noted that
>
> there is the blunt reality that a witness who has been acquitted will almost certainly deny the misconduct, either because he did no wrong or because he may understandably believe that when asked about it after an acquittal, he is entitled to have the law regard him as innocent. Thus, the only purpose served by permitting the inquiry is to place before the jury the allegation of misconduct contained in the prosecutor's question, an allegation the jury will be instructed has no evidentiary weight. To permit the inquiry risks unfair prejudice, which is not justified by the theoretical possibility that the witness, though acquitted, will admit to the misconduct.[57]

Here, the underlying documents for the 2012 Charge make clear that, although the Government possessed evidence indicating DeWald's guilt, he denied many of the statements offered by the alleged victim.[58] This, of course, amplifies the likelihood that DeWald would deny any wrongdoing, thereby giving rise to the concerns noted by the Ninth Circuit.

Finally, although raised by neither party, the Court is concerned that permitting evidence related to the 2012 Charge could result in a significant waste of

---

[56] *DeWald*, 1:14-cr-00090-TWP-DML (Doc. 1 at 5-6).
[57] *Schwab*, 886 F.2d at 513.
[58] *DeWald*, 1:14-cr-00090-TWP-DML (Doc. 1 at 6-7).

time and would risk confusing the jury. The Government would be required to provide some evidence or testimony regarding the 2012 Charge, which would in turn push DeWald to offer evidence or testimony—or at the very least lengthy cross examination—to rebut the Government's evidence. This could result in a trial within a trial as both parties attempt to either prove or disprove that the acts underlying the 2012 Charge occurred. This would not only consume a great deal of time but would distract the jury from the pertinent issues in *this* case. For those reasons, the Government will be prohibited from introducing evidence related to the 2012 Charge.

### III. CONCLUSION

For the foregoing reasons, DeWald's motion *in limine* will be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge